**Captain Sheriff SAUDI, Plaintiff,**

v.

**NORTHROP GRUMMAN CORP., et al., Defendants.**

**No. CIV.A.02 CV 00972.**

United States District Court,
District of Columbia.

March 19, 2003.

---

Sheriff Saudi, Bellaire, TX, pro se.

William Lewis Stauffer, Jr., Bracewell & Patterson, LLP, Reston, VA, for defendants.

## MEMORANDUM OPINION

COLLYER, District Judge.

Captain Sheriff Saudi has filed this lawsuit, *pro se*, against Northrop Grumman Corporation ("Northrop Grumman"), Newport News Shipbuilding, Inc. ("NN Shipbuilding"), Keppel Group Corp., d/b/a Keppel Offshore and Marine Ltd., and Keppel Shipyard (Pte.) Ltd. (collectively, "Keppel") for injuries suffered when a crane that was transferring him between two ships collapsed, dropping him into the ocean and then falling on top of him.[1] Northrop Grumman and NN Shipbuilding have answered Captain Saudi's Complaint with a Motion to Dismiss for Improper Venue or, Alternatively, to Transfer. Captain Saudi has responded to this motion and the reply filed by Northrop Grumman and NN Shipbuilding. On November 14, 2002, the parties argued orally on this matter at a motions hearing before Judge Richard J. Leon, to whom this case was assigned at that time.[2]

Upon review of the parties' briefs, the transcript of the motions hearing, and the relevant statutes and case law, the motion to dismiss is denied and the alternative motion to transfer the case to the Eastern District of Virginia is granted.

## I. BACKGROUND

Captain Saudi is a resident of Texas and has been a "master of ships" since 1970.[3]

---

1. It appears that Captain Saudi has not served process on Keppel, as he has not filed a Return of Service affidavit for that company.

2. The Calendar Committee of the Court randomly assigned this case to Judge Rosemary M. Collyer when she was appointed to the Court.

3. Consistent with the standard of review applied when reviewing a motion to dismiss, the facts listed in this section are taken from Captain Saudi's Complaint, subsequent filings, and testimony at the motions hearing.

Transcript of Motions Hearing on Nov. 14, 2002 ("Tr.Mot.Hrg.") at 17. On May 17, 1999, he was in a basket attached to a port side hose handling crane being lifted from the vessel S/T Marine Atlantic ("Marine Atlantic") to the vessel M/V American Discovery ("American Discovery"). Captain Saudi alleges that, at some point during the transfer, the jib on the crane broke loose from its mounting and fell overboard, causing him to drop "fifty (50) feet into the Gulf of Mexico with the jib on top of him." Complaint at 5. Apparently, internal spline gears, which supported the jib, had corroded over the years and "had spun free from their meshings with each other, thereby removing support for the crane jib and allowing it to collapse." *Id.* at 6.

The crane in question was mounted on the Marine Atlantic when that vessel was built in the Newport News Shipyard in Virginia in 1979. NN Shipbuilding had purchased the crane from a Wisconsin company known as Appleton, Inc. ("Appleton"). According to the Complaint, the Marine Atlantic was "reactivated" in 1994 by Marine Transport Lines, Inc., which docked the vessel at Keppel Tuas Shipyard in Singapore. There, personnel from Keppel allegedly "refurbished, remanufactured, and/or rebuilt the vessel . . ., including its hose handling cranes . . . ." *Id.* at 5. Marine Atlantic Ltd., the owner of the Marine Atlantic at that time, then placed the vessel in the stream of international maritime commerce.

The first count in the complaint alleges common law negligence. Captain Saudi asserts that the crane had a defective design and that Northrop Grumman and NN Shipbuilding failed to provide an adequate warning of the dangers of the use of the crane.[4] He also asserts that Keppel breached its duty to redesign the crane according to 1994 safety standards when it refurbished the Marine Atlantic. Count two sounds in strict products liability, alleging a failure to design and manufacture the crane safely. Counts three and four allege breaches of the implied warranty of merchantability for the crane.

## II. ANALYSIS

Captain Saudi bases subject matter jurisdiction of his lawsuit on diversity of citizenship under 28 U.S.C. § 1332(a)[5] and, with respect to his claims against Keppel, general maritime jurisdiction under 28 U.S.C. § 1333(1).[6] *See* Complaint at 3. Consequently, venue must be determined pursuant to both 28 U.S.C. § 1391(a) and (b).

In accordance with section 1391(a), a lawsuit based on diversity of citizenship generally may be brought only in

(1) a judicial district where any defendant resides, if all defendants reside in

---

4. Captain Saudi avers that Northrop Grumman is liable as a successor-in-interest to NN Shipbuilding because it assumed that company's liabilities, including the liability for any injury caused by vessels NN Shipbuilding sold, when it purchased NN Shipbuilding sometime after 1979.

5. Section 1332(a) provides:

The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—(1) citizens of different States;

(2) citizens of a State and citizens or subjects of a foreign state; (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and (4) a foreign state . . . as plaintiff and citizens of a State or of different States. 28 U.S.C. § 1332(a).

6. Section 1333(1) provides, "The district courts shall have original jurisdiction, exclusive of the courts of the States, of . . . [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1).

the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action might otherwise be brought.

28 U.S.C. § 1391(a).

■ Venue is not proper in this case under subsection (a)(1). As corporations, Northrop Grumman and NN Shipbuilding are deemed "to reside in any judicial district in which [they are] subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). The District of Columbia Code allows a court to exercise personal jurisdiction over a claim "arising from [a] person's causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia." D.C. CODE § 13–423(a)(4) (2002). The record is unclear whether these companies regularly conduct business in the District of Columbia so that they would be subject to personal jurisdiction under the local long-arm statute. *See Fogle v. Ramsey Winch Co.*, 774 F.Supp. 19 (D.D.C.1991). That question is not dispositive; because Keppel is also a defendant, not *all* defendants may be said to reside in the District of Columbia.[7] Therefore, section 1391(a)(1) does not create venue in this district.

Venue is also not proper under subsection (a)(2). At the motions hearing, defense counsel aptly summarized why this district lacks venue under that subsection: "[S]hip built in Virginia, crane from Wisconsin, ship refurbished in Singapore, injury in the Gulf of Mexico, Mr. Saudi in Texas. Nothing here in the District of Columbia." Tr. Mot. Hrg. at 6. Captain Saudi later attempted to establish sufficient contacts with the District of Columbia based on his belief that NN Shipbuilding was manufacturing "a lot of ships for the government" in 1979 and that "any military contracts probably it [sic] would have to be approved by the government of the United States in Washington, D.C." *Id.* at 17–18. Taking into consideration Captain Saudi's causes of action, which do not mention or even allude to any conduct by the federal government, these (speculative) facts are too far removed to allow the Court to find that a "*substantial* part of the events or omissions *giving rise* to the claim occurred" in the District of Columbia for purposes of subsection (a)(2). 28 U.S.C. § 1391(a)(2) (emphasis added).

Section 1391(a)(3) offers a third option for venue in diversity cases that might ostensibly apply—"a judicial district in which *any* defendant is subject to personal jurisdiction at the time the action is commenced[.]" However, that subsection concludes with the phrase, "if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(a)(3) (emphasis added). Northrop Grumman and NN Shipbuilding argue that this lawsuit could have been brought in the Eastern District of Virginia, so that section 1391(a)(3) cannot be relied upon to create venue in the District of Columbia. They are correct. The Marine Atlantic was

---

7. Captain Saudi acknowledges in his Opposition, "Since Defendant, Keppel Group Corporation, is located in Singapore '... all Defendants (do not) reside in the same state ....'

Subsection (1) of 28 U.S.C. [§ ] 1391(a) is inapplicable." Plaintiff's Opposition ("Pl. Opp.") at 2.

manufactured in Newport News, Virginia, where the allegedly defective crane was also mounted. Therefore, "a substantial part of the events or omissions giving rise to the claim occurred" in the Eastern District of Virginia, which includes Newport News, under subsection (a)(2). Indeed, Captain Saudi appears to recognize this fact in his Opposition. *See* Pl. Opp. at 2 ("Since an 'event' or 'omission giving rise to the claim' occurred with respect to these Defendants with the installation of a defective crane in Newport News Shipyards, it is possible that venue could be proper (assuming Defendants admit jurisdiction) in the Eastern District of Virginia, Norfolk Division.").

■ As with section 1391(a), venue is improper in the District of Columbia for Captain Saudi's claims against Keppel pursuant to the Court's general maritime jurisdiction. Section 1391(b), which deals with "cases wherein jurisdiction is not founded solely on diversity of citizenship[,]" appears to apply here. *See Korea Express USA, Inc. v. K.K.D. Imports, Inc.*, 103 F.Supp.2d 682, 687 (S.D.N.Y.2000) (applying 28 U.S.C. § 1391(b) to a contract action in which the plaintiff asserted "general maritime jurisdiction"). That statute provides that these types of cases generally may be brought only in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).

Subsections (b)(1) and (b)(2) are identical to subsections (a)(1) and (a)(2), analyzed above. Subsection (b)(3) differs from subsection (a)(3); however, courts utilize subsection (b)(3) only when there is no district in which the action may otherwise be brought. The Court has already determined that the Eastern District of Virginia is such a district, rendering this subsection inapplicable to Captain Saudi's lawsuit.

■ Having found that venue is improper in the District of Columbia under both section 1391(a) and (b), the Court transfers this case to the Eastern District of Virginia because it is the most appropriate forum to hear Captain Saudi's claims. It is likely that most, if not all, of the events or omissions giving rise to the claims against Northrop Grumman and NN Shipbuilding occurred in Virginia, where the Marine Atlantic was built and the crane was attached. As such, many of the witnesses in this case will be located in Virginia. Convenience of the parties also weighs in favor of the Eastern District of Virginia; it would be a more convenient forum for NN Shipbuilding, which is located there, and only slightly less convenient than the District of Columbia for Captain Saudi, who would be traveling from Texas, and Keppel.

In transferring this case to the Eastern District of Virginia, the Court is aware that Captain Saudi's lawsuit may be barred by the Commonwealth's two-year statute of limitations. *See* Tr. Mot. Hrg. at 15. Although the Court is sympathetic to Captain Saudi's situation, policy considerations demand that the Court's decision does not encourage forum shopping. *See Packer v. Kaiser Found. Health Plan of the Mid–Atlantic States, Inc.*, 728 F.Supp. 8, 11 (D.D.C.1989) ("To bar transfer of a case to a district where venue and jurisdiction are proper, simply because the action is time-barred in that district, would merely encourage forum shopping.").

### III.  CONCLUSION

For these reasons, the Court denies Northrop Grumman and NN Shipbuilding's motion to dismiss and grants their alternative motion to transfer the case to the Eastern District of Virginia, Norfolk Division, pursuant to 28 U.S.C. § 1406(a). A separate Order accompanies this Memorandum Opinion.

### *ORDER*

For the reasons set forth in the Memorandum Opinion that accompanies this Order, it is hereby

**ORDERED** that Defendants' Motion to Dismiss is **DENIED**.  It is

**FURTHER ORDERED** that Defendants' Motion to Transfer is **GRANTED**. The case shall be transferred to the Eastern District of Virginia, Norfolk Division.

**SO ORDERED.**